## In re NEW ENGLAND THREAD CO.

(District Court, D. Rhode Island. June 28, 1907.)

### No. 652.

BANKRUPTCY—PREFERRED CLAIM—WAGES.

Where a bankrupt corporation employed claimant to make sales of its product in a certain territory for 5 per cent. commission on all sales made within the territory to the dry goods, notion, and tailor trimming trade. out of which claimant was required to pay his expenses, such compensation constituted "wages," within Bankrupt Act July 1, 1898, § 64b (4), c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], entitling wage claimants to a preference for wages due from the bankrupt to the extent of $300.

In Bankruptcy.

Mendell W. Crane, for trustee.

Hugh J. Carroll, for claimant.

BROWN, District Judge. The term "wages" is variously defined, but it seems clear that when section 64b (4) of the bankruptcy act of July 1, 1898 (chapter 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]), was amended so as to read "wages due to workmen, clerks, traveling or city salesmen," etc., the term "wages" was intended to include the customary and usual compensation of traveling or city salesmen. A right to priority being given to persons performing services of a certain character, the priority depends upon the character of the services, rather than upon the particular mode of payment. As it is a familiar fact that the compensation of traveling or city salesmen is often given in the form of a commission upon the amount of sales, the term "wages," upon a proper construction of the amended act, is broad enough to include commissions for services as salesman.

By the contract between the bankrupt corporation and the petitioning creditor, it was expressly provided that the petitioner—

"will  *  *  *  diligently and faithfully serve the first party in the capacity of salesman in its business of manufacturing threads, tapes, and other materials, and will therein perform the reasonable directions of said first party," etc.

The bankrupt agreed:

"That in remuneration for said services, it will pay to the second party a commission of 5 per centum on all sales made in the territory and to the class of trade mentioned below; said commission to be paid on the 20th of each month for shipments made during the previous month."

The sales were to be confined to the dry goods, notion, and tailor trimming trade in certain specified territory.

Both by the terms of the agreement and by the agreement as interpreted by the parties, the service performed was the sale of goods. Although in a letter to the trade the petitioner was designated "special representative," and although he hired an office and displayed a sign with the words "special representative," he had no general authority, and was a representative merely in the sale of goods. He was not an independent contractor, since he was to act under the direction of his employer, was to make sales of his employer's goods only, at prices fixed by the employer, and since the orders received were subject to approval by his employer. He was to receive commissions only upon the amount of shipments. In case orders were not accepted and shipments made, the petitioner was not entitled to his commission.

It is urged that the petitioner was not only to solicit orders, but was also to receive such orders as should come without his personal solicitation, and that he was to receive a commission of 5 per cent. on all shipments made, whether upon orders procured by his own solicitation, or upon orders which came to him without his solicitation. Bearing in mind that the service was that of selling goods, and that the transmission of orders received without his solicitation was a convenient incident to his duty as salesman, it cannot be said that he became either an independent contractor or a commission agent, because his compensation was to be figured upon the total amount of sales in certain territory. There is no apparent reason why a salesman may not be paid for his services as salesman by a percentage of the employer's gross sales, as well as by a percentage of those sales procured by his immediate solicitation. Practically, it is a somewhat difficult matter to determine what orders received by an employer are due to the efforts of an experienced and important salesman like the petitioner. Many of the orders received by the employer might have been a consequence more or less direct of previous efforts of the salesman. If practical men deem it proper that the arrangement for compensation should be based on the entire sales in the salesman's territory, whether they are directly traceable to him or not, we cannot say that compensation of this character is not as strictly compensation for services of the salesman as a fixed salary or a fixed percentage of sales actually traceable to the salesman.

It is also suggested that, as the petitioner was under expense for an office and stenographer, it is impossible to apportion his wages from his expenses. The fact that by an arrangement between employer and salesman the salesman is to pay his own expenses cannot lessen the salesman's right to the agreed compensation, where the expenses are fairly incidental to the service to be performed.

I am of the opinion that the duties required by the contract and actually performed were those of both a traveling and city salesman, and that the agreed compensation falls within the term "wages," as it must be defined to give a reasonable effect to the intention of Congress to prefer persons performing a certain character of service.

The finding of the referee is reversed, and the claim of the petitioner to priority to the extent of $300 will be allowed.